Case 4:18-cv-00536 Document 14 Filed on 01/17/19 in TXSD Page 1 of 18

United States District Court
Southern District of Texas
**ENTERED**
January 17, 2019
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LINDA MAE HERKSHAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-18-536 |
| | § | |
| NANCY A. BERRYHILL, | § | |
| ACTING COMMISSIONER OF THE | § | |
| SOCIAL SECURITY ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND RECOMMENDATION**

Pending before the court[1] are Defendant's Cross-Motion for Summary Judgment (Doc. 10) and Plaintiff's Memorandum in Support of a Motion for Summary Judgment (Doc. 11). The court has considered the motions, Defendant's response, Plaintiff's reply, the administrative record, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that Defendant's motion be **DENIED** and Plaintiff's motion be **GRANTED**.

**I. Case Background**

Plaintiff filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of an unfavorable decision by the Social Security Administration ("SSA") Commissioner ("Commissioner" or "Defendant") regarding Plaintiff's claim for supplemental security benefits under Title XVI of the Social

---

[1] This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. See Doc. 8, Ord. Dated May 2, 2018.

Security Act ("the Act").

## A. Medical History and Administrative Process

In April 2013, prior to the alleged disability period, Plaintiff sought treatment for a work injury that resulted in chronic back and leg pain.[2] In July 2013, after a few months of largely unsuccessful conservative treatment, David Wimberley, M.D., recommended right L4 and L5 posterior lumbar decompression/microdiscectomy.[3] Although willing, Plaintiff did not undergo surgery and, in June 2014, saw Scott Orth, M.D., ("Dr. Orth") who recommended against surgical intervention.[4] Instead, Dr. Orth recommended an exercise program and referred Plaintiff to physical therapy for instructions.[5]

From May 8, 2014, to September 12, 2014, Plaintiff received routine care at MLK Health Center ("MLK").[6] An August 2014 treatment note indicated that Plaintiff was newly diagnosed with diabetes mellitus ("diabetes") and was prescribed medication.[7] During her period of treatment at MLK, Plaintiff also sought and received treatment for back pain, heel spurs, lower-extremity

---

[2]  See Doc. 7, Tr. of the Admin. Proceedings ("Tr.") 260.

[3]  See Tr. 261.

[4]  See Tr. 261, 320-21.

[5]  See Tr. 321.

[6]  See Tr. 345-69, 393-408.

[7]  See Tr. 348.

edema, abdominal pain, and hypothyroidism.[8] Two weeks after her initial diabetes diagnosis, Plaintiff received emergency treatment for elevated blood glucose at Ben Taub Hospital.[9]

Before Plaintiff's last visit to MLK, she began treatment at Vallbona Health Center ("VHC") in August 2014.[10] The medical records reflect she was seen at VHC at least once a month until March 2, 2016, including more frequent visits in early 2016.[11] During that time, she sought and received treatment for uncontrolled diabetes and various related complications, gastroesophageal reflux disease ("GERD"), hypothyroidism, back pain, knee pain, muscle spasms, headaches, edema, numbness and tingling in hands, depression, and other disorders.[12]

Plaintiff filed an application for supplemental security income with a protective filing date of May 31, 2014.[13] Plaintiff alleged a disability onset of May 28, 2014, due to "[t]ennis elbow, herniated disc, heel spur, [e]lbow problem, [b]ack problem, [l]eg problem, and [f]eet problem."[14] Plaintiff was forty-nine years old

---

[8]    See Tr. 345-69, 393-408.

[9]    See Tr. 377-92.

[10]   See Tr. 458-59.

[11]   See Tr. 409-565.

[12]   See id.

[13]   See 144-51.

[14]   Tr. 144, 175.

on the alleged onset date.[15]

On September 2, 2014, the SSA found Plaintiff not disabled at the initial level of review.[16] On November 18, 2014, the SSA again found Plaintiff not disabled upon reconsideration.[17] Plaintiff requested a hearing before an ALJ.[18] The ALJ granted Plaintiff's request and scheduled the hearing on July 13, 2016.[19]

**B. Hearing**

At the hearing, Plaintiff and a vocational expert testified.[20] Plaintiff was represented by an attorney who conducted Plaintiff's examination.[21]

Plaintiff testified that, upon telling a physician at VHC that she "was losing [her] balance constantly," Plaintiff was told to use a cane to support herself.[22] Plaintiff discussed her back problems, explaining that her VHC physician told Plaintiff to lose weight before she would be able to undergo surgery.[23] Plaintiff

---

[15] See Tr. 144.

[16] See Tr. 56-65.

[17] See Tr. 66-76.

[18] See Tr. 12, 91-93.

[19] See Tr. 12, 110-14.

[20] See Tr. 26-54.

[21] See Tr. 12, 26, 28, 32-49.

[22] Tr. 34.

[23] See Tr. 40-41.

4

indicated that she had lost "quite a bit" of weight.[24]

As far as symptoms that she experienced, Plaintiff complained of severe pain, muscle spasms in her neck, back, and legs, shakiness, weakness, knee pain, daily swelling in her lower legs, neuropathic pain in her feet, and difficulty managing her blood glucose levels.[25] Regarding blood glucose, Plaintiff said that she had recently been treated at the hospital for extremely high readings and that her treatment providers had tried several insulin medications without success in controlling her blood glucose levels.[26] Plaintiff testified that injections in her back and one knee failed to curb the pain in those areas.[27] Plaintiff described her mental condition as depressed and stated that the prescribed medications did not alleviate the symptoms.[28]

Plaintiff reported that she required assistance with personal hygiene when she could not get out of bed.[29] Plaintiff said that her bed was upstairs and that she had difficulty going up and down the stairs.[30] When she was unable to go downstairs, she said,

---

[24] See Tr. 40.

[25] See Tr. 36-38, 41-45.

[26] See Tr. 43-44.

[27] See Tr. 39, 45.

[28] See Tr. 45-46.

[29] See Tr. 36.

[30] See Tr. 37.

someone else in the household took meals to her.[31]

While testifying, Plaintiff found it necessary to stand for a few minutes.[32] Plaintiff estimated that she could stand comfortably for ten to fifteen minutes, could sit comfortably for fifteen to thirty minutes, and could walk a block with the assistance of a cane.[33] Plaintiff reported needing to lie down two to three times a day for thirty minutes to an hour.[34] She said that, if she was able to tolerate crowds at a grocery store, she was able to shop but that she could only lift milk or a small bag of potatoes.[35]

Having no questions for Plaintiff, the ALJ turned to the vocational expert.[36] The ALJ posed the following hypothetical question:

> Let's then consider an individual of the same age, education, work experience as the claimant. Said individual would be limited to less than the full range of light work in that [she] could occasionally lift and carry up to 20 pounds, frequently lift and carry up to ten pounds, sit six of eight, stand or walk six of eight, push and pull as much as [she] could lift and carry. In terms of ability to climb ramps and stairs would be limited to occasional. Should avoid ladders, ropes or scaffolding, may only occasionally kneel, crouch, crawl or stoop. Time off task would be able to be accommodated by normal breaks, and absences would be from one day a

---

[31]    See Tr. 36.

[32]    See Tr. 46.

[33]    See Tr. 47-48.

[34]    See Tr. 48.

[35]    See Tr. 48-49.

[36]    See Tr. 49-50.

      month or less. Would an individual of that description be able to engage in any work consisting of significant numbers in the regional or [n]ational [e]conomy?[37]

The vocational expert responded that the individual could perform the work of an office helper, a photocopy machine operator, and a mail clerk.[38]

**C. <u>Commissioner's Decision</u>**

    On August 10, 2016, the ALJ issued an unfavorable decision.[39] At the beginning of his decision the ALJ stated:

> In rendering this decision, the undersigned considered the evidence of record in its entirety even if not specifically mentioned [in] this decision. Specific evidence which is not discussed is either not relevant to the decision, supports the decision, or if not supportive was incorporated into a discussion of similar exhibits. Every effort has been made to identify all evidence supporting or defining the claimant's case.[40]

The ALJ reinforced these statements with representations that he "considered the complete medical history" and gave "careful consideration of all the evidence" and "careful consideration of the entire record."[41]

    The ALJ thoroughly discussed Plaintiff's medical records dating from January 2013 through April 2014 as well as the June

---

[37]     Tr. 51.

[38]     Tr. 51-52.

[39]     Tr. 12-21.

[40]     Tr. 12.

[41]     Tr. 12, 15.

2014 appointment with Dr. Orth.[42] However, he made few references to information found in her May 2014 to March 2016 treatment records from MLK and VHC.[43] Specifically, he noted the diabetes and GERD diagnoses, the results of a 2015 back x-ray, Plaintiff's weight, her reported daily activities, and the results of a diabetic foot examination.[44]

The ALJ accorded Dr. Orth's opinion only partial weight because of the "short treatment relationship" and because Dr. Orth "was not particularly familiar with the case record."[45] The ALJ did not explain what weight he accorded the treatment records from MLK and VHC, which he never referenced by name of clinic or provider.[46] The ALJ accorded great weight to the opinions of the nonexamining medical consultants "because they [were] well explained and consistent with the evidence of record when reviewed in its entirety."[47] He found that "[n]o new evidence received after their review [was] sufficiently persuasive to alter the functional limitations imposed by the state agency."[48]

The ALJ found that Plaintiff had not engaged in substantial

---

[42] See Tr. 16-18.

[43] See Tr. 12-21.

[44] See Tr. 14, 18-19.

[45] Tr. 19.

[46] See id.

[47] Id.

[48] Id.

gainful activity since May 31, 2014, Plaintiff's application date.[49] The ALJ recognized lumbar degenerative disc disease and obesity as severe.[50] However, he found Plaintiff's diabetes, tennis elbow, and GERD to be slight abnormalities.[51] The ALJ found that Plaintiff did not meet the requirements of any medical listing for presumptive disability ("Listings"),[52] specifically addressing Listing 1.04 (disorders of the spine).[53]

The ALJ found Plaintiff's residual functional capacity ("RFC") allowed her:

> to perform light work . . . except lift 20 pounds occasionally and 10 pounds frequently; sit 6 hours out of 8; stand/walk 6 hours out of 8; push/pull as much as can lift and carry; occasionally climb ramps and stairs; never climb ropes, ladders, and scaffolds; occasionally stoop, kneel, crouch, and crawl; time off task can be accommodated by normal breaks; and the claimant would be absent from work one day a month.[54]

The ALJ found that Plaintiff had no past relevant work, which rendered transferability of job skills a nonissue.[55] Due to her age and limited education, the ALJ categorized Plaintiff as an

---

[49] See Tr. 14.

[50] See id.

[51] See id.

[52] "The Listings" refers to medical impairments that automatically qualify a claimant for disability benefits as listed in Appendix 1 of the regulations. 20 C.F.R. Pt. 404, Subpt. P, App. 1.

[53] See Tr. 15.

[54] Id.

[55] See Tr. 19.

individual closely approaching advanced age with limited education.[56] Relying on the vocational expert's testimony, the ALJ found Plaintiff able to perform the duties of an office helper, a photo copy machine operator, and a mail clerk.[57] On that basis, the ALJ found that Plaintiff was not disabled at any time from Plaintiff's protective filing date to the date of the ALJ's decision.[58]

On August 30, 2016, Plaintiff appealed the ALJ's decision.[59] On March 6, 2017, the Appeals Council denied Plaintiff's request for review, thereby transforming the ALJ's decision into the final decision of the Commissioner.[60]

## II. Standard of Review and Applicable Law

The court's review of a final decision by the Commissioner denying disability benefits is limited to the determination of whether: 1) substantial evidence in the record supports the decision; and 2) the ALJ applied proper legal standards in evaluating the record. <u>Waters v. Barnhart</u>, 276 F.3d 716, 718 (5th Cir. 2002).

---

[56]   <u>See</u> <u>id.</u>

[57]   <u>See</u> Tr. 20.

[58]   Tr. 12, 20.

[59]   <u>See</u> Tr. 7-8.

[60]   <u>See</u> Tr. 1-3.

10

**A. <u>Substantial Evidence</u>**

The widely accepted definition of "substantial evidence" is "that quantum of relevant evidence that a reasonable mind might accept as adequate to support a conclusion." <u>Carey v. Apfel</u>, 230 F.3d 131, 135 (5th Cir. 2000). It is "something more than a scintilla but less than a preponderance." <u>Id.</u> The Commissioner has the responsibility of deciding any conflict in the evidence. <u>Id.</u> If the findings of fact contained in the Commissioner's decision are supported by substantial record evidence, they are conclusive, and this court must affirm. 42 U.S.C. § 405(g).

Only if no credible evidentiary choices of medical findings exist to support the Commissioner's decision should the court overturn it. <u>See</u> <u>Johnson v. Bowen</u>, 864 F.2d 340, 343-44 (5th Cir. 1988). In applying this standard, the court is to review the entire record, but the court may not reweigh the evidence, decide the issues de novo, or substitute the court's judgment for the Commissioner's judgment. <u>Brown v. Apfel</u>, 192 F.3d 492, 496 (5th Cir. 1999). In other words, the court is to defer to the decision of the Commissioner as much as is possible without making its review meaningless. <u>Id.</u>

**B. <u>Legal Standard</u>**

In order to obtain disability benefits, a claimant bears the ultimate burden of proving she is disabled within the meaning of the Act. <u>Wren v. Sullivan</u>, 925 F.2d 123, 125 (5th Cir. 1991).

Under the applicable legal standard, a claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a); see also Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994). The existence of such a disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings. 42 U.S.C. § 423(d)(3), (d)(5)(A); Jones v. Heckler, 702 F.2d 616, 620 (5th Cir. 1983).

To determine whether a claimant is capable of performing any "substantial gainful activity," the regulations provide that disability claims should be evaluated according to the following sequential five-step process:

> (1) a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are; (2) a claimant will not be found to be disabled unless [s]he has a "severe impairment;" (3) a claimant whose impairment meets or is equivalent to [a Listing] will be considered disabled without the need to consider vocational factors; (4) a claimant who is capable of performing work that [s]he has done in the past must be found "not disabled;" and (5) if the claimant is unable to perform h[er] previous work as a result of h[er] impairment, then factors such as h[er] age, education, past work experience, and [RFC] must be considered to determine whether [s]he can do other work.

Bowling v. Shalala, 36 F.3d 431, 435 (5th Cir. 1994); see also 20 C.F.R. § 416.920. The analysis stops at any point in the process upon a finding that the claimant is disabled or not disabled.

Greenspan, 38 F.3d at 236.

### III. Analysis

Plaintiff requests judicial review of the ALJ's decision to deny disability benefits. Plaintiff asserts that the ALJ's RFC determination is not supported by substantial evidence because he failed to consider the medical evidence from MLK and VHC and he relied on outdated opinions of nonexamining medical consultants. Defendant argues that the ALJ's decision is supported by substantial evidence and is legally sound.

A claimant's RFC is her remaining ability to work despite all of the limitations resulting from her impairment. See 20 C.F.R. § 416.945(a); Villa v. Sullivan, 895 F.2d 1019, 1023 (5th Cir. 1990). The ultimate responsibility for determining this issue lies with the ALJ. 20 C.F.R. § 416.927(d)(2); Taylor v. Astrue, 706 F.3d 600, 602-03 (5th Cir. 2012). Even so, the ALJ must evaluate every medical opinion in the record and decide what weight to give each. See 20 C.F.R. § 416.927(c). The ALJ is required to give good reasons for the weight given a treating source's opinion. 20 C.F.R. § 416.927(c)(2); SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

> When the determination or decision . . . is a denial[,] . . . the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

13

SSR 96-2p, 1996 WL 374188, at *5.

Here, the ALJ gave pen service to the requirement that he must consider every medical opinion in the record. He asserted that he considered all evidence of record "even if not specifically mentioned [in] his decision."[61] He also generally held that any specific evidence not discussed was not relevant, supported the decision, or was incorporated in the discussion of similar evidence. Finally, he represented that he made the effort to identify all evidence that supported or defined Plaintiff's claim.

The court's concern is that, despite these asseverations, the ALJ did not fully evaluate the medical records from MLK and VHC. He certainly did not provide any discussion of those records, a glaring deficiency considering that they span nearly two years of Plaintiff's medical treatment and two-thirds of the medical record. The medical records from MLK and VHC were relevant to Plaintiff's medical conditions and to the alleged period of disability; they do not fully support the ALJ's decision; and they included too much additional treatment and too many additional complaints to be said to have been similar to any evidence discussed.

The court acknowledges that the ALJ was aware of these records because he noted, without date or provider references, that Plaintiff had been diagnosed with diabetes and GERD. He also cited several other medical facts found in the MLK and VHC records but

---

[61] Tr. 12.

failed to mention Plaintiff received ongoing and frequent treatment at those clinics and did not provide any sort of overview of that treatment.

Instead, the ALJ thoroughly discussed treatment from January 2013 to April 2014, all of which occurred prior to Plaintiff's alleged disability period. The only time-relevant medical record that he discussed in any detail was the appointment with Dr. Orth on June 16, 2014, which the ALJ discounted because he found the doctor was not sufficiently familiar with Plaintiff's case. The ALJ's decision was supported by more than a year of medical treatment that was of limited time relevance. In effect, the ALJ cited few references to relevant and credible medical findings. The court therefore finds that the ALJ's decision was not based on substantial medical evidence.

Moreover, the ALJ also committed a legal error, not by failing to discuss the records from MLK and VHC, but by failing to articulate the weight accorded the MLK and VHC treating source opinions. When an ALJ commits a legal error, the court must determine whether the error was harmless before "revers[ing] and remand[ing] for failure to comply with a regulation." Bornette v. Barnhart, 466 F. Supp.2d 811, 816 (E.D. Tex. 2006)(citing Frank v. Barnhart, 326 F.3d 618, 622 (5th Cir. 2003)). Harmless error exists when there is no possibility that the ALJ would have reached a different conclusion absent the error. Id. (citing Frank, 326 F.3d

at 622).

Because the ALJ did not even discuss the time-relevant medical records, the failure to articulate the weight given or to provide good reasons for that weight, is amplified. The ALJ failed to fully and fairly evaluate the facts related to disability. This is not an error the court can overlook. Although this reviewing court is left with the impression that the ALJ accorded no weight to the vast majority of Plaintiff's medical record, it cannot fathom the ALJ's reasons. He certainly did not clearly express any. Furthermore, the court may not review the records, determine appropriate weight, or provide good reasons. To do so would violate the court's prohibition against deciding issues de novo. All circumstances considered, the court finds that the ALJ's error was not harmless in that a thorough evaluation of the extensive, time-relevant treating-source medical records could alter the outcome in this case.

Plaintiff also argues that the nonexamining medical consultants' opinions were outdated because they did not have the benefit of more than a year of treatment records. Plaintiff speculates that the ALJ therefore resorted to his own interpretation of these records in determining Plaintiff's RFC. Plaintiff cites the part of Social Security Ruling 96-6p that refers to additional medical evidence, arguing that the ALJ should have obtained a new consultative medical opinion. The ALJ

addressed this issue, stating that, in his opinion, the newer medical evidence was not sufficiently persuasive to affect the medical consultants' RFC findings. Without the benefit of the ALJ's opinion on the value of the medical records for the period after the consultants' review, the court is in no position to question the ALJ's decision not to employ a medical expert to review the entire medical record. That is left to the ALJ's discretion after providing a weight analysis on the MLK and VHC medical records.

## IV. Conclusion

Based on the foregoing, the court **RECOMMENDS** that Plaintiff's motion be **GRANTED** and Defendant's motion be **DENIED**. The case should be **REMANDED** for further consideration as explained herein.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 17th day of January, 2019.

_____
U.S. MAGISTRATE JUDGE